UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| AMCOR FLEXIBLES INC, | No. C 14-01025 LB |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| FRESH EXPRESS INC, | [Re: ECF No. 14] |
| Defendant. | |

# INTRODUCTION

Plaintiff Amcor Flexibles, Inc. ("Amcor") sued Defendant Fresh Express, Inc. ("Fresh Express") for breach of contract and unlawful and unfair business practices. *See* Complaint, ECF No. 1.[1] Fresh Express moves to dismiss Amcor's Complaint. *See* Motion to Dismiss, ECF No. 14. Pursuant to Civil Local Rule 7-1(b), the court found this matter suitable for determination without oral argument and vacated the June 19, 2014 hearing. Upon consideration of the Complaint, the briefs submitted, and the applicable legal authority, the court **DENIES** Fresh Express's motion.

# STATEMENT

## I. FACTS

### A. The 2006 Supplier Agreement and the Purchase Order Standard Terms

On or about February 8, 2006, Amcor and Fresh Express entered into a 2006 Film Supplier

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

C 14-01025 LB
ORDER RE MOTION TO DISMISS

Agreement ("2006 Supplier Agreement" or "Master Agreement") in which Amcor agreed to procure raw materials and manufacture finished fresh salad bags for Fresh Express. Complaint ¶ 9 & Ex. A. The term of the 2006 Supplier Agreement was from February 1, 2006 to December 31, 2006, and each year it was to renew automatically for an additional year unless terminated by either party. *Id.* ¶ 10 & Ex. 1. Paragraph 9 of the 2006 Supplier Agreement provides that "[e]ither party may terminate this Agreement without cause by giving the other party ninety (90) days written notice." *See id.*, Ex. A.

Incorporated into the 2006 Supplier Agreement was the so-called "Vendor Packet," which included Fresh Express Incorporated Purchase Order Standard Terms and Conditions ("Purchase Order Standard Terms"), the Seller Guaranty and Indemnification Agreement, and the Nondisclosure Agreement. *See id.*, Ex. B. Specifically, Paragraph 11 of the 2006 Supplier Agreement states:

> 11. <u>Terms and Conditions:</u> This [2006 Supplier] Agreement is a part of and incorporates the Purchase Order and the Fresh Express Standard Terms and Conditions, the Seller Guarantee and Indemnification Agreement and the Nondisclosure agreement ("Vendor Packet"). This [2006 Supplier] Agreement, along with the Purchase Order and the Fresh Express Vendor Packet constitute the final, complete and exclusive statement of the terms of the agreement between the parties pertaining to the subject matter of this agreement. If there are any conflicts between the terms of this [2006] Supplier Agreement and the terms of the Vendor Packet, the terms of the Vendor Packet shall prevail.

*Id.*, Ex. A.

The Purchase Order Standard Terms that were incorporated into the 2006 Supplier Agreement includes provisions for the purchaser's limitations of liability and a shortened two-year statute of limitations for certain kinds of legal claims. Specifically, Paragraph 19 of the Purchase Order Standard Terms provides:

> 19. <u>Limitation on Purchaser's Liability (Statute of Limitations):</u> Except as provided herein, in no event shall [Fresh Express] be liable for incidental or consequential damages. [Fresh Express's] liability on any claim of any kind for any loss or damage arising out of or in connection with or resulting from this agreement or from the performance or breach thereof shall in no case exceed the price allocable to the goods or services or unit thereof, which gives rise to the claim. [Fresh Express] shall not be liable for penalties of any description. Any action resulting from any breach on the part of [Fresh Express] as to the goods or services delivered hereunder must be commenced within two years after the cause of action has accrued.

*Id.*, Ex. B.

The Purchase Order Standard Terms also contains provisions allowing Fresh Express to

terminate the agreement for its convenience and making clear that the Purchase Order Standard Terms prevails over the 2006 Supplier Agreement, in the event of conflict. Specifically, Paragraph 2 of the Purchase Order Standard Terms provides:

> 2. <u>Termination for Convenience of Purchaser:</u> [Fresh Express] reserves the right to terminate this purchase order or any part hereof for its sole convenience. In the event of such termination, [Amcor] shall immediately stop all work hereunder, and shall immediately cause its suppliers or subcontractors, if any, to cease such work. [Amcor] shall be paid a reasonable termination charge consisting of: (i) a percentage of the order price reflecting the percentage of the work performed and products produced prior to the notice of termination, (ii) plus actual direct costs resulting from termination, and (iii) profit margin built in the [2006] Supplier Agreement. [Amcor] shall not be paid for any work done and products produced after receipt of the notice of termination, nor for any costs incurred by [Amcor's] suppliers or subcontractors with [Amcor] could reasonably have avoided.

*Id.*, Ex. B. And Paragraph 13 provides:

> 13. <u>Entire Agreement:</u> This purchase order and any documents referred to on the face hereof, including any nondisclosure agreement or guaranty executed by the [Amcor] for the benefit of [Fresh Express], constitute the entire agreement between the parties. Notwithstanding anything to the contrary, the parties may enter into a Supplier Agreement. Any conflict between the terms of this purchase order and those of the Supplier Agreement or Guaranty, the terms and conditions of this purchase order and of the Guaranty shall prevail.

*Id.*, Ex. B.

Finally, Paragraph 20 of the Purchase Order Standard Terms states that the laws of California shall apply to all disputes arising under it. *Id.*, Ex. B.

**B. The 2009 Agreement**

In September 2009, Amcor and Fresh Express entered into a letter agreement ("2009 Agreement") under which Fresh Express was to be the exclusive purchaser of Amcor's newly-developed Evolution Laminated Paper Bag ("Evolution"). *Id.* ¶ 13 & Ex. C. The exclusivity was to apply for a period of 36 months, followed by "automatic annual renewals on an Evergreen basis." *Id.* at ¶ 17 & Ex. C.

The 2009 Agreement also sets forth Fresh Express's agreement to maintain its "Base Business" with Amcor for business other than the Evolution product. *Id.* ¶ 15. The Base Business provision provides that the terms of the 2006 Supplier Agreement (referred to in the provision as the "Master Agreement") and the Vendor Packet shall apply to all purchases under the 2009 Agreement. *Id.*, Ex. C. The Base Business provision provides:

> Base Business (Business Other Than Evolution):
> During the term of this exclusivity agreement, except in the case of significant market share changes, and/or catastrophic events affecting consumer demand for bagged salads, there will be no significant decrease to the base business that Amcor currently enjoys with Fresh Express/Chiquita as measured against the previous calendar year. Base Business is defined as the number of impressions of film in the film to film lamination business in a particular calendar year. The parties agree that pricing for the Base Business shall be in accordance with the agreed pricing model as defined by the existing supplier agreement in place between the two companies dated February 1, 2006 ("Master Agreement"). Further to the proceeding sentences, (i) Fresh Express/Chiquita's Base Business commitment described in this Section shall not apply where Amcor does not comply with the pricing set forth in the Master Agreement, and (ii) neither Amcor's obligation to sell Evolution exclusively to Fresh Express/Chiquita as set forth above under "Exclusivity" nor the exclusivity of the license described below under "Termination" shall apply if Fresh Express/Chiquita does not comply with the pricing set forth in the Master Agreement. The Vendor Packet as referenced in the Master Agreement applies to all purchases under this agreement.

*Id.*, Ex. C.

The 2009 Agreement also contains a "Termination" provision, which provides as follows:

> Termination:
> This agreement will not be terminated except: (1) In the case of bankruptcy by either party, (2) Fresh Express/Chiquita desires to end the Exclusivity agreement which may be done with 180 days notice in writing, (3) as set forth otherwise provided in this Agreement.

*Id.*, Ex. C.

In reliance on the 2009 Agreement, Amcor did not sell Evolution packages to other companies, despite being asked by other companies about whether Amcor could provide such products. *Id.* ¶ 18. In or about November 2011, Amcor discovered that Fresh Express was communicating with Amcor's competitors relating to the purchase of salad bags. *Id.* ¶ 19. At the same time, Fresh Express informed Amcor of its decision to stop marketing the Evolution product. *Id.*

Three months later, in or about February 2012, Fresh Express verbally advised Amcor that it had ended its Evolution experiment, but that it wished to keep the exclusivity with Amcor and would continue to maintain its overall purchase level. *Id.* ¶ 20. Amcor alleges that despite these promises, and despite Fresh Express's obligations under the 2009 Agreement, Fresh Express significantly decreased its purchase of Base Business products beginning in or around 2011. *Id.* ¶ 21.

Six months later, on or about August 28, 2012, Amcor notified Fresh Express that it was in breach of the 2009 Agreement due to its alleged significant decrease in Base Business purchases in

or around 2011. *Id.* ¶¶ 21-22. On or about September 4, 2012, Fresh Express responded by providing a written notice of termination, stating that its relationship with Amcor had terminated in mid-2011when it stopped purchasing the Evolution product. *Id.* ¶ 23.

Based on the September 4, 2012 written notice of termination, Amcor alleges that Fresh Express was obligated to purchase the required level of Base Business products through March 4, 2013 pursuant to the 2009 Agreement's 180-day termination provision. *Id.* ¶¶ 25-26. As a result of Fresh Express's breach of the 2009 Agreement, Amcor claims it has suffered lost profits. *Id.* ¶ 39. Amcor also claims that Fresh Express's unlawful and unfair business practices had led to Fresh Express's unjust enrichment at the expense of Amcor. *Id.* ¶ 46.

## II. PROCEDURAL HISTORY

On March 5, 2014, Amcor filed its Complaint. Complaint, ECF No. 1. It contains the following claims: (1) breach of contract; and (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., for unlawful and unfair business practices. *See id.* ¶¶ 28-46.

Fresh Express did not answer the Complaint. Instead, on April 22, 2014, Fresh Express moved to dismiss Amcor's Complaint under Federal Rule of Civil Procedure 12(b)(6). Motion to Dismiss, ECF No. 14. Amcor opposed the motion on May 20, 2014. Opposition, ECF No. 20. Fresh Express filed a reply on May 27, 2014. Reply, ECF No. 21.

## ANALYSIS

## I. LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## II. DISCUSSION

Fresh Express moves to dismiss the Complaint on three grounds. It argues that Amcor's claims are (1) barred by the applicable two-year statute of limitations, (2) lacking in merit because Fresh Express properly terminated the 2009 Agreement without being in breach, and (3) barred to the extent that the parties' contracts waive Fresh Express's liability for the requested relief. *See* Motion to Dismiss, ECF No. 14 at 2, 10. The court addresses each argument in turn.

### A. Amcor's Claims Are Not Barred by the Statute of Limitations

Fresh Express first argues that all of Amcor's claims are barred by the agreed-upon two year statute of limitations provision included in the Purchase Order Standard Terms. Motion to Dismiss, ECF No. 14 at 5; Reply, ECF No. 21 at 7. Amcor responds that its claims are not subject to the statute of limitations provision in the Purchase Order Standard Terms and that neither the 2006 Supplier Agreement nor the 2009 Agreement provide for any shortened period. Accordingly, Amcor

1  contends that the applicable statute of limitations is four years, pursuant to California Code of Civil
2  Procedure § 337.  Opposition, ECF No. 20 at 8-10.

3      A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable
4  statute of limitations only when "the running of the statute is apparent on the face of the complaint."
5  *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006) (quoting *Jablon v. Dean*
6  *Whitter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).  "[A] complaint cannot be dismissed unless it
7  appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness
8  of the claim."  *Id.* (citing *Supermail Cargo, Inc. v. U.S.,* 68 F.3d 1204, 1207 (9th Cir. 1995)).

9      California's statute of limitations for a breach of contract claim is four years.  *See* Cal. Civ. Proc.
10 Code § 337; *W. Filter Corp. v. Argan*, Inc., 540 F.3d 947, 951 (9th Cir. 2008).  It is well-settled that
11 courts applying California law will enforce a shortened statute of limitations so long as the period
12 fixed is "not so unreasonable as to show imposition or undue advantage."  *See Beeson v. Schloss*,
13 183 Cal. 618, 622-623 (1920); *Charnay v. Cobert*, 145 Cal. App. 4th 170, 183 (2006); *W. Filter*
14 *Corp. v. Argan*, Inc., 540 F.3d 947, 952 (9th Cir. 2008).  "'Reasonable' in this context means the
15 shortened period nevertheless provides sufficient time to effectively pursue a judicial remedy."
16 *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003).  However, "contractual stipulations are
17 disfavored . . . because they are in derogation of the statutory limitation.  Therefore, they should be
18 construed with strictness against the party invoking them."  *W. Filter Corp.* 540 F.3d at 952 (quoting
19 *Lewis v. Hopper*, 140 Cal. App. 2d 365, 367 (1956)) (internal quotations marks omitted); *see*
20 *Automotive Holdings, LLC v. Phoenix Corners Portfolio, LLC*, No. CV-09-01843-PHX-JAT-PHX-
21 JAT, 2010 WL 1781007, at *3 (D. Ariz. May 4, 2010) ("The Ninth Circuit [in *W. Filter Corp.*] has
22 provided guidance that in jurisdictions that do not favor statute of limitations modifications, clauses
23 that seek to limit the statute of limitations must be strictly construed against the party invoking the
24 limitation."); *Jackson v. S.A.W. Entm't Ltd.*, 629 F. Supp. 2d 1018, 1028 (N.D. Cal. 2009)
25 ("Contractual agreements to shorten the statute of limitations period are generally disfavored
26 because they "derogate" statutory intent.").  Thus, in order for parties to successfully reduce the
27 statute of limitations, the parties must use "clear and unequivocal language . . . that permits the
28 conclusion that the parties have unambiguously expressed a desire" to do so.  *See Herring v.*

*Teradyne, Inc.*, 242 Fed. Appx. 469, 471 (9th Cir. 2007). If a contract is capable of two different reasonable interpretations, the contract is ambiguous. *Oceanside 84, Ltd. v. Fidelity Federal Bank*, 56 Cal. App. 4th 1441, 1448 (1997) (citations omitted).

Here, Fresh Express argues that the parties' agreement in the Purchase Order Standard Terms to shorten the statute of limitations meets all necessary requirements of California law in that the two-year time frame is clear and explicit, reasonable, and not against public policy. Motion to Dismiss, ECF No. 14 at 9. The two-year time frame in the Purchase Order Standard Terms may well be reasonable and not against public policy. California courts have allowed agreed upon limitations periods to be shortened to as short as three months without violating public policy. *See*, *e.g.*, *Capehart v. Heady*, 206 Cal. App. 2d 386 (1962) (upholding the three-month period within which the tenant could file suit against the landlord); *Beeson v. Schloss*, 183 Cal. 618 (1920) (holding that the six-month statute of limitations was a sufficient time to bring an action for unpaid commissions). The two-year period also does not violate the terms under the California Commercial Code § 2725, which allows parties to reduce the limitations period for a claim for the breach of any contract for sale to not less than one year.

Even so, the court finds no "clear and unequivocal language" in the statute of limitations clause "that permits the conclusion that the parties have unambiguously expressed a desire to reduce the statute of limitations" as to the claims brought forth by Plaintiff. *See W. Filter Corp.*, 540 F.3d at 951 (quoting *Herring,* 242 Fed. Appx. at 471). In *W. Filter Corp.*, the issue was whether a survival clause's one-year limitation served as a contractual limitation on the applicable statute of limitation or set forth the period of time for which a breach could occur. *Id.* The Ninth Circuit found that the language at issue there ("[t]he representations and warranties of [Western Filter] and [Argan] in this Agreement shall survive the Closing for a period of one year") was ambiguous as to whether the clause created a limitation period. *Id.* at 949, 954. Argan contended that the language created a one-year statute of limitations period, while Western Filter contended that the language meant only to specify when a breach of the representations and warranties may occur and did not limit when an action must be filed. *Id.* at 951. The Ninth Circuit found both interpretations reasonable given the ambiguous language and held, in light of the rule that stipulations to limit a statute of limitations

C 14-01025 LB
ORDER RE MOTION TO DISMISS                            8

must be clear and explicitly and is to be strictly construed against the part invoking the provision, that the district court erred in ruling that the language created a one-year limitations period. *Id.* at 954.

Here, the statute of limitations clause in Paragraph 19 of the Purchase Order Standard Terms is similarly ambiguous. It provides in relevant part that:

> Any action resulting from any breach on the part of [Fresh Express] *as to the goods or services delivered hereunder* must be commenced within two years after the cause of action has accrued.

Complaint, ECF No. 1, Ex. B (emphasis added). On one hand, it could be construed to cover only breaches regarding goods that were actually purchased or delivered, and to not cover breaches arising from the Fresh Express's failure to purchase or take delivery of the goods, as Amcor contends. *See* Opposition, ECF No. 20 at 9. On the other hand, it also could be interpreted to cover any breach regarding the purchase or delivery of goods in general, including Fresh Express's failure to do so, as Fresh Express contends. *See* Reply, ECF No. 21 at 5-6. In light of this ambiguity, it is not clear whether the statute of limitations clause in the Purchase Order Standard Terms applies to Amcor's claims, which are based on Fresh Express's failure to purchase its products. Hence, the court finds the statute of limitations language in Paragraph 19 of the Purchase Order Standard Terms to be ambiguous and lacking the clear and unequivocal language as required by *W. Filter Corp.* and *Herring*. *Cf. In re All American Semiconductor*, No. 07–12963–BKC–LMI, 490 B.R. 418, 427 (S.D. Fla. Jan. 25, 2013) (applying California law, citing *W. Filter Corp.*, and finding the following provision shortening the statute of limitations to be clear and unequivocal: "no action, regardless of form, arising out of, relating to or in any way connected with the Agreement, Software, Documentation or Services provided or to be provided by PeopleSoft may be brought by either party more than one (1) year after the cause of action has accrued").

Because the statute of limitations language in Paragraph 19 of the Purchase Order Standard Terms is unclear as to whether the breach includes Fresh Express's failure to purchase or take delivery of the goods, and in light of the court's obligation to strictly construe any contractual limitation against the party seeking to invoke it, the court rejects Fresh Express's argument that a two-year statute of limitations applies here. The court thus finds that Amcor's claims are subject to

the normal four-year statute of limitations for claims for breach of contract.  Under that limitations period, Amcor's claims would be barred if the alleged breach occurred more than four years from the filing of the Complaint on March 5, 2014 (*i.e.* before March 5, 2010).  Here, although Amcor and Fresh Express argue about when the alleged breach occurred, all of the suggested dates were after March 2010.  As a result, the applicable four-year statute of limitations does not bar Amcor's claims.[2]  Accordingly, the court denies Fresh Express's motion to dismiss based on its statute of limitations defense.

### B. Amcor Has Sufficiently Stated a Claim for Breach of Contract

Fresh Express's second argument is that Amcor's breach of contract claim fails because Fresh Express properly terminated the 2009 Agreement because it had the right to terminate its agreement with Amcor at its "convenience" without notice or cause.  Motion to Dismiss, ECF No. 14 at 10.  Amcor responds by stating that Fresh Express confuses the basis for Amcor's breach of contract claim, which is for Fresh Express's failure to purchase the required amount of Base Business products and not for improper termination of the 2009 Agreement or for its decision to stop purchasing Evolution products.  Opposition, ECF No. 20 at 10.

Amcor's breach of contract claim is based on Fresh Express's failure to fulfill its obligation under the 2009 Agreement to purchase Base Business products without significant reduction and on its failure to continue those monthly purchases until 180 days after giving written notice of termination.  *See* Complaint ¶ 36, ECF No. 1 at 7.  Nowhere in its Complaint does Amcor allege that Fresh Express breached the 2009 Agreement simply by improperly terminating the agreement.  *See generally id.*

Even so, the court nevertheless addresses Fresh Express's argument that it did not have to provide written notice of termination and why this argument lacks merit.  Fresh Express argues that under the Purchase Order Standard Terms, Fresh Express does not need to provide written notice or cause for termination, but rather has the authority to terminate the agreements for any reason, or for

---

[2] Because the court finds that the applicable four-year statute of limitations does not bar Amcor's claims, there is no need for the court to address the parties' arguments regarding the "continuous accrual" of Amcor's claims.

C 14-01025 LB
ORDER RE MOTION TO DISMISS                      10

1  no reason, for its sole convenience.  Motion to Dismiss, ECF No. 14 at 11.  As a reminder, the

2  Paragraph 2 of the Purchase Order Standard Terms provides:

3      2.  <u>Termination for Convenience of Purchaser</u>: Purchaser reserves the right to terminate this purchase order or any part hereof *for its sole convenience*.  In the event of such termination, Seller shall immediately cause its suppliers or subcontractors, if any, to cease such work.  Seller shall be paid a reasonable nomination charge consisting of (i) a percentage of the order price reflecting the percentage of the work performed and product produced prior to the notice of termination, (ii) plus actual direct causes resulting from termination, and (iii) profit margin built in the Supplier Agreement.  Seller shall not be paid for any work done and products produced after receipt of the notice of termination, nor for any costs incurred by Seller's supplies or subcontractors which Seller could reasonably have avoided.

9  *See* Complaint, ECF No. 1, Ex. B (emphasis added).   Despite Fresh Express's view of it, Paragraph

10  2 confirms only that Fresh Express has the right to terminate "this purchase order or any part hereof

11  for its sole convenience"—in other words, for any particular reason or for no reason at all.  It does

12  not, however, say anything about how Fresh Express may effect such termination, nor does it

13  address how Fresh Express must notify Amcor of this.  Thus, Paragraph 2 of the Purchase Order

14  Standard Terms does not conflict with the explicit termination provision contained in the 2009

15  Agreement, which provides:

16      <u>Termination:</u>
    This agreement will not be terminated except: (1) In the case of bankruptcy by either party, (2) Fresh Express/Chiquita desires to end the Exclusivity agreement which may be done with 180 days notice in writing, (3) as set forth otherwise provided in this Agreement.

19  Complaint, ECF No. 1, Ex. C.  This provision specifically requires Fresh Express to end the

20  Exclusivity agreement by providing 180 days written notice of intent to terminate.  Fresh Express's

21  argument that it Paragraph 2 of the Purchase Order Standard Terms allowed it to terminate its

22  agreements with Amcor without providing a written notice, then, is belied by the 2009 Agreement's

23  "Termination" clause.  Fresh Express implicitly concedes as much by failing to address this

24  argument in its reply brief.  *See generally* Reply, ECF No. 21.

25      Accordingly, the court rejects Fresh Express's argument that it could terminate the 2009

26  Agreement without providing written notice and thus denies Fresh Express's motion to dismiss as to

27  the sufficiency of Amcor's breach of contract claim.

28

C 14-01025 LB
ORDER RE MOTION TO DISMISS          11

**C. The Parties Did Not Waive Fresh Express's Liability for Unlawful and Unfair Business Practices**

Fresh Express's third and final argument is that Amcor's claim for unlawful and unfair business practices pursuant to California Business and Professions Code § 17200 et seq. fails under the terms of the 2009 Agreement. Motion to Dismiss, ECF No. 14 at 12. Specifically, Fresh Express argues that under the Purchase Order Standard Terms that were incorporated into the 2009 Agreement, Amcor is not entitled to incidental or consequential damages, or penalties of any description, and that Fresh Express's liability is limited to the price allocable to the goods or services or unit thereof. *Id.* Amcor responds by contending that restitution stemming from unlawful and unfair business practices is different from incidental or consequential damages, and are not penalties barred by the 2009 Agreement. Opposition, ECF No. 20 at 14. Fresh Express did not address Amcor's argument in its reply brief. *See generally* Reply, ECF No. 21.

California Business & Professions Code § 17200, also known as California's "Unfair Competition Law" or "UCL," prohibits "any unlawful, unfair or fraudulent" business practices. Cal. Bus. & Prof. Code § 17200. "Since section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition. The statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'" *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see also CelTech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

To support a claim for a violation of the UCL, a plaintiff cannot simply rely on general common law principles. *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (2004). A party may bring a section 17200 claim only if he or she shows that he or she "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Business and Professions Code § 17204. To have standing, a plaintiff must sufficiently allege that (1) he has "lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution" and (2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted). The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha*

*Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the basis for a UCL claim.  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1994).  In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003).

The remedies that are clearly available to a plaintiff under the UCL are "restitution and/or injunctive relief against unfair or unlawful practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (citations omitted).  Section 12703 enables the court to provide "orders or judgements . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.  An order for restitution is defined as "one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.'" *Korea Supply Co.*, 29 Cal. 4th at 1144-45 (quoting *Kraus v. Trinity Mgmt. Serv., Inc.*, 23 Cal. 4th 116, 126-127 (2000)).  The concept of restoration or restitution, as used in the UCL, however, is not limited only to the return of money or property that was once in the possession of that person. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178 (2000).  "Instead, restitution is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest." *Korea Supply Co.*, 29 Cal. 4th at 1149.

Amcor alleges that Fresh Express unlawfully and unfairly breached the 2009 Agreement by significantly decreasing its required Base Business purchases and by purchasing products from Amcor's competitors.  Complaint ¶¶ 42-44, ECF No. 1.  As a result of Fresh Express's unlawful and unfair business practices, Amcor claims that Fresh Express has been improperly and unjustly enriched at Amcor's expense.  *Id.* ¶ 46.  Therefore, Amcor claims it is entitled to restitution and other reliefs as provided by California Business and Professions Code § 17200 et seq. *Id.*  To refute Amcor's claims, Fresh Express again points to Paragraph 19 of the Purchase Order Standard Terms

1  to argue that Fresh Express is waived from liabilities arising from incidental or consequential

2  damages, or penalties of any description. Motion to Dismiss, ECF No. 14 at 12. Paragraph 19

3  provides in relevant part:

> 19. <u>Limitation on Purchaser's Liability (Statute of Limitations):</u>
> Except as provided herein, in no event shall Purchaser be liable for incidental or consequential damages. Purchaser's liability on any claim of any kind for any loss or damage arising out of or in connection with or resulting from this agreement or from the performance or breach thereof shall in no case exceed the price allocable to the goods or services or unit thereof, which gives rise to the claim. Purchaser shall not be liable for penalties of any description. . . .

Complaint, ECF No. 1, Ex. B.

Although Fresh Express correctly notes that parties may agree to limit their liability in the event of a breach, and that limitation of liability provisions "have long been recognized as valid in California," *see Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1040, 1048 (C.D. Cal. 2003), Fresh Express incorrectly conflates incidental and consequential damages with the restitution that Amcor seeks under the UCL. Fresh Express also mistakenly identifies Amcor's claim for restitution as a penalty barred by the Standard Terms. As the California Supreme Court has explained, the object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest, which is different from punitive remedies such as penalties, which provide for recovery of damages additional to actual losses incurred. *See Clark v. Superior Court*, 50 Cal. 4th 605 (2010). The court agrees with Amcor in finding that the remedy Amcor seeks under the UCL is different from a penalty or incidental and consequential damages.

Here, Amcor has alleged sufficient facts to state a claim for restitution arising from unfair and unlawful competition. According to the 2009 Agreement, Fresh Express agreed to maintain purchases of Base Business products in return for Amcor granting exclusivity on Evolution products. *See* Complaint, ECF No. 1, Ex. C. Amcor argues that Fresh Express failed to honor the 2009 Agreement and instead "undertook a course of conduct designed to avoid paying Amcor what it was rightfully entitled to under the contract." Opposition, ECF. No. 20 at 15. Amcor thus seeks "to recover money or property in which [it] has a vested interest." *Korea Supply Co.*, 29 Cal. 4th at 1149. This is sufficient under the UCL's broadly interpreted allowance for restitution.

Accordingly, the court denies Fresh Express's motion to the extent that it asks the court dismiss

Amcor's UCL claim.

## CONCLUSION

For the foregoing reasons, the court **DENIES** Fresh Express's motion to dismiss. Fresh Express shall file an answer to Amcor's Complaint within 14 days from the date of this order. *See* Fed. R. Civ. P. 12(a)(4)(A).

This disposes of ECF No. 14.

**IT IS SO ORDERED.**

Dated: July 1, 2014

_____
LAUREL BEELER
United States Magistrate Judge