UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| AMCOR FLEXIBLES INC, | No. C 14-01025 LB |
| Plaintiff, | **ORDER DENYING FRESH EXPRESS'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER AND A COUNTERCLAIM** |
| v. | |
| FRESH EXPRESS INC, | |
| Defendant. | [Re: ECF No. 51] |

## INTRODUCTION

On March 3, 2014, Plaintiff Amcor Flexibles, Inc. ("Amcor") sued Defendant Fresh Express, Inc. ("Fresh Express") for breach of contract and unlawful and unfair business practices. (*See* Complaint, ECF No. 1.[1]) At the initial case management conference, the court set September 26, 2014 as the deadline to seek leave to amend the pleadings. On January 22, 2015, with less than two months remaining until the deadline to complete fact discovery, Fresh Express moved for leave to file an amended answer in order to add affirmative defenses and a counterclaim against Amcor. (*See* Motion, ECF No. 51.) Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the March 5, 2015 hearing. Upon consideration of the briefs submitted and the applicable legal authority, the court denies Fresh Express's motion.

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**STATEMENT**

**I. FACTS**

**A. The 2006 Supplier Agreement and the Standard Terms**

On or about February 8, 2006, Amcor and Fresh Express entered into a 2006 Film Supplier Agreement ("2006 Supplier Agreement" or "Master Agreement") in which Amcor agreed to procure raw materials and manufacture finished fresh salad bags for Fresh Express. (Complaint ¶ 9, ECF No. 1 at 2.) The term of the 2006 Agreement was from February 1, 2006 to December 31, 2006, with an automatic renewal, unless terminated by either party. (Complaint ¶ 10, ECF No. 1 at 3.) Paragraph 9 of the 2006 Supplier Agreement provides that "[E]ither party may terminate this Agreement without cause by giving the other party ninety (90) days written notice." (*See id.,* Ex. A.) Both parties also signed and incorporated into the 2006 Supplier Agreement the Fresh Express Incorporated Purchase Order Standard Terms and Conditions ("Standard Terms"), the Seller Guaranty and Indemnification Agreement, and the Nondisclosure Agreement (together with the Standard Terms, "Vendor Packet").

The 2006 Supplier Agreement states in relevant part:

> 11. Terms and Conditions:
> This Agreement is a part of and incorporates the Purchase Order and the Fresh Express Standard Terms and Conditions, the Seller Guarantee and Indemnification Agreement and the Nondisclosure agreement ("Vendor Packet"). This Agreement, along with the Purchase Order and the Fresh Express Vendor Packet constitute the final, complete and exclusive statement of the terms of the agreement between the parties pertaining to the subject matter of this agreement. If there are any conflicts between the terms of this Supplier Agreement and the terms of the Vendor Packet, the terms of the Vendor Packet shall prevail.

(Complaint, ECF No. 1, Ex. A.)

The Standard Terms that were incorporated into the 2006 Supplier Agreement includes provisions for the purchaser's limitations of liability and a shortened two-year statute of limitations as follows:

> 19. Limitation on Purchaser's Liability (Statute of Limitations):
> Except as provided herein, in no event shall Purchaser be liable for incidental or consequential damages. Purchaser's liability on any claim of any kind for any loss or damage arising out of or in connection with or resulting from this agreement or from the performance or breach thereof shall in no case exceed the price allocable to the goods or services or unit thereof, which gives rise to the claim. Purchaser shall not be liable for penalties of any description. Any action resulting from any breach on the part of Purchaser as to the goods or services delivered hereunder must be commenced within two years after the cause of action has accrued.

(Complaint, ECF No. 1, Ex. B.)

The Standard Terms contains other provisions based on the purchaser's termination for convenience and the prevalence of the Standard Terms over the 2006 Supplier Agreement:

> 2. <u>Termination for Convenience of Purchaser</u>:
> Purchaser reserves the right to terminate this purchase order or any part hereof for its sole convenience. . . . Seller shall not be paid for any work done and products produced after the notice of termination, nor for any costs incurred by Seller's suppliers or subcontractors with Seller could reasonably have avoided.
>
> . . .
>
> 13. <u>Entire Agreement</u>:
> This purchase order and any documents referred to on the face hereof, including any nondisclosure agreement or guaranty executed by the Seller for the benefit of Purchaser, constitute the entire agreement between the parties.  Notwithstanding anything to the contrary, the parties may enter into a Supplier Agreement.  Any conflict between the terms of this purchase order and those of the Supplier Agreement or Guaranty, the terms and conditions of this purchase order and of the Guaranty shall prevail.

(*Id.*)

Paragraph 20 of the Standard Terms also states that the laws of California shall apply to all disputes thereunder.  (*Id.*)

**B.  The 2009 Agreement**

In September 2009, Amcor and Fresh Express entered into a letter agreement ("2009 Agreement") for Fresh Express to be the exclusive purchaser of Amcor's newly-developed Evolution Laminated Paper Bag ("Evolution").  (Complaint ¶ 13, ECF No. 1 at 3.)  The exclusivity was to apply for a period of 36 months, followed by automatic annual renewals on an "Evergreen" basis.  (*Id.* at ¶ 17.)  The exclusivity terms are set forth in the 2009 Agreement in part as follows:

> <u>Exclusivity</u>:
> Amcor offers to sell Fresh Express Incorporated and Chiquita Brands LLC ("Fresh Express/Chiquita") the Evolution Package exclusively for sale in North America, and Fresh Express/Chiquita agrees to purchase this package exclusively from Amcor.

(Complaint, ECF No. 1, Ex. C.)

The 2009 Agreement also sets forth Fresh Express's agreement to maintain its "Base Business" with Amcor for business other than the Evolution product.  The Base Business provision provides that the terms of the 2006 Supplier Agreement (referred to in the provision as the "Master Agreement") and the Vendor Packet shall apply to all purchases under the 2009 Agreement.

3

1  (Complaint, ECF No. 1, Ex. C.) The Base Business provision is as follows:

2  Base Business (Business Other Than Evolution):
During the term of this exclusivity agreement, except in the case of significant market share changes, and/or catastrophic events affecting consumer demand for bagged salads, there will be no significant decrease to the base business that Amcor currently enjoys with Fresh Express/Chiquita as measured against the previous calendar year. Base business is defined as the number of impressions of film in the film to film lamination business in a particular calendar year. The parties agree that pricing for the Base Business shall be in accordance with the agreed pricing model as defined by the existing supplier agreement in place between the two companies dated February 1, 2006 ("Master Agreement"). Further to the proceeding sentences, (I) Fresh Express/Chiquita's Base Business commitment described in this Section shall not apply where Amcor does not comply with the pricing set forth in the Master Agreement, and (ii) neither Amcor's obligation to sell Evolution exclusively to Fresh Express/ Chiquita as set forth above under "Exclusivity" nor the exclusivity of the license described below under "Termination" shall apply if Fresh Express/ Chiquita does not comply with the pricing set forth in the Master Agreement. The Vendor Packet as referenced in the Master Agreement applies to all purchases under this agreement.

11 (*Id.*)

12 The 2009 Agreement defines what constitutes "Termination" as follows:

13  Termination:
This agreement will not be terminated except: (1) In the case of bankruptcy by either party, (2) Fresh Express/Chiquita desires to end the Exclusivity agreement which may be done with 180 days notice in writing, (3) as set forth otherwise provided in this Agreement.

16 (*Id.*)

17  In reliance on the 2009 Agreement, Amcor did not sell Evolution packages to other companies, despite being asked by other companies about whether Amcor could provide such products. (Complaint ¶ 18, ECF No. 1 at 5.) In or about November 2011, Amcor discovered that Fresh Express was communicating with Amcor's competitors relating to the purchase of salad bags. (*Id.* at ¶ 19.) At the same time, Fresh Express informed Amcor of its decision to stop marketing the Evolution product. (*Id.*)

23  In or about February 2012, Fresh Express verbally advised Amcor that it had ended its Evolution experiment, but that Fresh Express wished to keep the exclusivity with Amcor and that Fresh Express would continue to maintain its overall purchase level. (*Id.* at ¶ 20.) Amcor alleges that despite these promises, and despite Fresh Express's obligations under the 2009 Agreement, Fresh Express failed to maintain its purchase of Base Business products and, in or around 2011, began significantly decreasing its purchase of Base Business products. (*Id.* at ¶ 21.)

In or about April 2012, Fresh Express released a request for proposals ("RFP") seeking a new supplier for all of its salad bag business. (See Motion, ECF 51 at 6.) Amcor submitted a bid, but in June 2012, Fresh Express informed Amcor that it had not been selected. (*Id*.)

On or about August 28, 2012, Amcor notified Fresh Express that it was in breach of the 2009 Agreement due to its alleged significant decrease in Base Business purchases in or around 2011. (Complaint at ¶¶ 21-22, ECF No. 1 at 5.) On or about September 4, 2012, Fresh Express responded by providing written notice of termination, stating that its relationship with Amcor had terminated in mid-2011when it stopped purchasing the Evolution product. (*Id.* at ¶ 23.)

Amcor alleges that as a result of the September 4, 2012 written notice of termination, Fresh Express was obligated to purchase the required level of Base Business products through March 4, 2013 pursuant to the 2009 Agreement, but has failed to do so. (*Id.* at ¶¶ 25-26.) As a result of the 2009 Agreement breach, Amcor claims it has suffered lost profits. (*Id.* at ¶ 39.) Amcor also claims that Fresh Express's unlawful and unfair business practices had led to Fresh Express's unjust enrichment at the expense of Amcor. (*Id.* at ¶ 46.)

## II. PROCEDURAL HISTORY

On March 5, 2014, Amcor filed its Complaint. (Complaint, ECF No. 1.) It contains the following claims: (1) breach of contract; and (2) violation of Cal. Bus. & Prof. Code § 17200 et seq. for unlawful and unfair business practices. (*Id.* ¶¶ 28-46.)

On April 22, 2014, Fresh Express moved to dismiss Amcor's Complaint. (Motion to Dismiss, ECF No. 14.) The court denied the motion on July 1, 2014. (Order Denying Defendant's Motion to Dismiss, ECF No. 24.) Fresh Express thereafter filed its answer to the complaint on July 15, 2014. (Answer, ECF No. 26.) On August 29, 2014, after the initial case management conference, the court established September 26, 2014 as the deadline for amendment of the pleadings and February 17, 2015 as the close of fact discovery. (Case Management and Pretrial Order, ECF No. 39.) Trial was also set for August of 2015. (*Id.*) On October 10, 2014, the close of fact discovery was extended to March 17, 2015. (Stipulation, ECF No. 41.) On December 11, 2014, the parties participated in mediation. (*See* Motion, ECF No. 51 at 2.)

On January 22, 2015, nearly five months after the scheduling order was issued, Fresh Express

moved for leave to amend its answer in order to add defenses and a counterclaim against Amcor. (Motion, ECF No. 51.) Amcor submitted its opposition brief on February 5, 2015. (Opposition, ECF No. 52.) Fresh Express submitted its reply in support of its motion on February 12, 2015. (Reply, ECF No. 55.)

**ANALYSIS**

**I. LEGAL STANDARD**

Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013). Because "Rule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted." *Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989) (citation omitted). Courts generally consider five factors when assessing the propriety of a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party and whether the party has previously amended the pleadings. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009).

Where a party seeks leave to amend after the date specified in a scheduling order, Rule 16(b) also applies. *Johnson v. Mammoth Recreations*, Inc., 975 F.2d 604, 608 (9th Cir. 1992). Under Rule 16(b), "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge." *Id*.; *see* Fed. R. Civ. P. 16(b)(4). Therefore, a party seeking to amend a pleading after the date specified in a scheduling order must first show "good cause" for the amendment under Rule 16(b), and second, if good cause is shown, the party must demonstrate that the amendment is proper under Rule 15. *Id*.

To determine whether good cause exists to modify the scheduling order, courts focus on the reasonable diligence of the moving party. *See Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007); *see also Johnson*, 975 F.2d at 609 (stating that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief" under Rule 16(b); adding that "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, [but] the focus of the inquiry is upon the moving party's reasons for

seeking modification"). "If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609.

**II. DISCUSSION**

Because Fresh Express did not seek leave to amend its answer until after the deadline established by the scheduling order, it must show that good cause exists under Rule 16(b). If it can do so, it must then show that leave is appropriate under Rule 15. Fresh Express seeks leave to add a counterclaim and new affirmative defenses. The court discusses each proposed amendment in turn.

**A. Fresh Express Has Not Shown that Good Cause to Add the Counterclaim Exists under Rule 16(b)**

Fresh Express seeks leave to add a counterclaim against Amcor. (Motion, ECF No. 51 at 2.) Fresh Express argues that Amcor's 2012 bid price for all of Fresh Express's salad bag business was significantly lower than the price Fresh Express had been paying to Amcor under the 2006 Supplier Agreement. The significant price discrepancy, Fresh Express contends, suggests that Amcor had been giving other salad bag buyers a better price than it had been giving to Fresh Express. If so, Amcor would have been (according to Fresh Express) in violation of the "price warranty" found in Paragraph 6 of the Standard Terms. That paragraph states:

> Price Warranty. Seller expressly warrants that the prices for the articles sold Purchaser hereunder are not less favorable than those currently extended to any other customer for the same articles in similar quantities. In the event Seller reduces its price for such article during the term of this purchase order, Seller agrees to reduce the prices hereof accordingly. Seller warrants that prices shown on this purchase order shall be complete, and no additional charges of any type shall be added without Purchaser's express written consent. Such additional charges include, but are not limited to, shipping, packaging, labeling, custom duties, taxes, storage, insurance, boxing, [or] crating.

(Complaint, ECF No. 1, Ex. B.) Fresh Express thus wants to bring a counterclaim against Amcor for breach of contract.

The "good cause" inquiry focuses on the diligence of the moving party. *See Noyes*, 488 F.3d at 1174 n.6; *see also Johnson*, 975 F.2d at 609.[2] Courts often find diligence where new facts

---

[2] Fresh Express does not explicitly argue its motion that it was diligent. Instead, it spends most of the pages arguing that its proposed counterclaim is not futile and that adding the claim to this action will not prejudice Amcor and would further interests of judicial economy. Futility, prejudice, and judicial economy, however, are factors to be considered under Rule 15. That inquiry

7

underlying the proposed amendment occurred or became known to the moving party after the scheduling order's deadline for amendment. *See Bolbol v. Feld Entertainment, Inc.*, 2012 WL 5828608 at *5-6 (N.D. Cal. Nov. 15, 2012); *Jackson v. Laureate, Inc.*, 186 F.R.D. 605 at 609 (E.D. Cal. June 16, 1999); *cf. Smith v. United States*, 2007 WL 2554142 at *2-3 (N.D. Cal. Sept. 4, 2007).

In its motion, Fresh Express says that its counsel first learned that Amcor offered Fresh Express a significant discount when its counsel was "preparing for [the December 11, 2014] mediation, reviewing documents, and interviewing witnesses" and first identified its proposed counterclaim in its "mediation summary" that it served on December 4, 2014. (Motion, ECF No. 51 at 3, 7.)

In its opposition, however, Amcor persuasively argues that Fresh Express either did know, or should have known, about this price discrepancy much earlier. First, it notes that Amcor's bid occurred in April 2012 and that Fresh Express's in-house counsel referred to its bid in a letter sent to Amcor dated September 4, 2012. (*See* Opposition, ECF No. 52 at 6-7; Jensen Decl., Ex. A, ECF No. 52-1 at 4-5.) Second, Amcor points out that Fresh Express explicitly acknowledged knowing about Amcor's 2012 bid in several documents served or filed in this action, such as the Rule 26 initial disclosures that Fresh Express served on August 22, 2013, and the parties' August 14, 2014 joint case management statement. (*See* Opposition, ECF No. 52 at 7-9; *see also* Jensen Decl., Ex. B (Fresh Express's Initial Disclosures), ECF No. 52-1 at 7-12 (stating that Fresh Express's in-house counsel has privileged knowledge about Amcor's bids to Fresh Express and that among the documents within Fresh Express's possession, custody, and control that may be used to support its claims or defenses are copies of, and data from, Amcor relating to all bids submitted to Fresh Express from 2005 to 2012); 8/14/2014 Joint CMC Statement, ECF No. 33 at 5 (stating that a

---

occurs only if Fresh Express first shows that it was diligent. Accordingly, the court addresses these factors later.

Fresh Express additionally argues that good cause exists because its counterclaim may later be deemed to have been compulsory under Rule 13(a), and thus waived if they are not allowed to raise it now. (Motion, ECF No. 51 at 9.) The potentially compulsory nature of the counterclaim, however, is unrelated to Fresh Express's diligence. Fresh Express has failed to point to any authority for the proposition that the potentially compulsory nature of a proposed counterclaim constitutes or supports a finding of good cause under Rule 16(b).

8

1  principal factual issue in dispute is whether Amcor submitted a bid in 2012 and that a legal issue is
2  whether Amcor's 2012 bid evidenced Amcor's intent to terminate the 2009 Agreement).)  Even if
3  Amcor had not compared Amcor's 2012 bid amount to the price Fresh Express was paying to Amcor
4  under the 2006 Supplier Agreement, it could have done so easily, and if it had, it could have sought
5  to add a counterclaim much earlier in this litigation.

6  In its reply, Fresh Express offers a different theory to support its argument that Amcor must have
7  been offering lower prices to its other customers.[3]  It says that its proposed counterclaim is based on
8  the discrepancy between Amcor's 2012 bid amount and the bid amounts of the other bidders, who
9  were Amcor's competitors.  (*See* Reply, ECF No. 55 at 2 ("Fresh Express's cause of action arises
10 from the fact that in a competitive bid process, where Amcor's prices can be compared against its
11 competitors, Amcor's competitor's bids were 20-28% lower than the prices Amcor was charging
12 Fresh Express. . . . This discrepancy, in a competitive bidding process, strongly suggests that if
13 Amcor was to have any other business, it would have to be offering other potential customers prices
14 in line with the other bidders.").)

15 Even so, the court is not persuaded by Fresh Express's new theory.  First, it is not clear that the
16 discrepancy between Amcor's bid and the other bids is "new and previously unavailable
17 information" that supports a finding of good cause.  *See Eckert Cold Storage, Inc. v. Behl*, 943 F.
18 Supp. 1230, 1233 (E.D. Cal. 1996).  All of the bid amounts were in Fresh Express's possession the
19 entire time.  What was new in December 2014 was Fresh Express's counsel *thinking* about all of
20 those bid amounts.  Second, even if the court considered the discrepancy between Amcor's bid and
21 the other bids to be a new fact to be discovered, Fresh Express still was not diligent.  The

---

[3] Fresh Express's motion states that its proposed counterclaim is based upon the discrepancy between the price Amcor charged it under the 2006 Supplier Agreement and Amcor's 2012 bid amount.  (*See* Motion, ECF No. 51 at 3 ("In the course of preparing for mediation, reviewing documents, and interviewing witnesses, Fresh Express's counsel learned that Amcor offered to sell Film to Fresh Express at significantly lower prices than its then[-]current prices, begging the question of whether Amcor was complying with its price warranty."), 4 ("Amcor's offers to reduce its prices to Fresh Express in a competitive bid process strongly suggests that Amcor had provided or offered 'other customer[s] for the same articles in similar quantities' at lower prices than it was charging Fresh Express at the time.").)  It says nothing about the discrepancy between Amcor's bid and other bids.

9

1  discrepancy is not based on events which only recently occurred, *see Bolbol*, 2012 WL 5828608 at
2  \*5 (finding that leave to amend was appropriate only where the "new factual allegations" involved
3  events that had occurred since the filing of the last operative complaint), nor was it identified
4  through information discovered from Amcor, *see Smith*, 2007 WL 2554142 at \*3 (granting leave
5  because the facts supporting the proposed amendment were discovered from depositions and
6  interrogatories).  It had all of the bids; it just had to look at them.  It says most of the witnesses
7  involved in the underlying contract negotiations are no longer employed at Fresh Express, but the
8  documents and at least two critical witnesses (including its associate general counsel) were still
9  there.  And even if new employees wee an issue (a conclusion that the record does not support),
10 Fresh Express does not explain why it took until December 2014 (over three months into fact
11 discovery) to begin to figure out which employees were still with the company or why it took so
12 long to start gathering information relevant to Amcor's 2012 bid.  (*See* Motion, ECF No. 51 at 10.)

      Finally, even putting aside this context, and considering Fresh Express's arguments about when it discovered the issue, Fresh Express says that it did not discover either discrepancy until it was preparing for the mediation that took place on December 11, 2014 and first identified the proposed counterclaim on December 4, 2014.  Again putting aside the conclusion that Fresh Express appears to have known the fact context supporting a counterclaim, Fresh Express, does not explain why it then took 49 days (December 4, 2014 to January 22, 2015) for it to move to add the counterclaim to this litigation.  *See Jackson*, 186 F.R.D. at 608 ("[T]o demonstrate diligence under Rule 16's 'good cause' standard, the movant may be required to show . . . that she was diligent in seeking amendment of the Rule 16 order" after the relevant new facts came to light.).  In the circumstances of this case, 49 days is too long.

      In short, the court does not find that Fresh Express was diligent under either of its theories. Thus, it has not met its burden to show that there is good cause under Rule 16 to allow it to add its proposed counterclaim at this stage in the litigation.  This alone is sufficient for the court to deny Fresh Express's motion.

**B.  Leave to Add the Counterclaim Is Inappropriate Under Rule 15, Too**

      Still, the court does not believe that Fresh Express has met its burden under Rule 15, either.

Under Rule 15, courts generally consider five factors when assessing the propriety of a motion for leave to amend: prejudice to the opposing party, undue delay, futility of the amendment, bad faith, and whether the party has previously amended the pleadings. *Ahlmeyer*, 555 F.3d at 1055.

Of these factors, prejudice is given the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Here, prejudice to Amcor likely would occur if Fresh Express is allowed to add a counterclaim at this stage of the litigation. On September 18, 2014, Amcor propounded 49 requests for production of documents and 20 interrogatories. (Discovery Letter Brief, ECF No. 56 at 1.) Amcor has also issued subpoenas for depositions and documents from a third party. (Joint Case Management Statement, ECF No. 53 at 2.) These efforts likely have been tailored to address the contours of the case as it has so far been defined. To allow Fresh Express to assert a counterclaim now would require Amcor to engage in additional discovery in order to ensure congruence with the altered nature of the case. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (recognizing "the nullification of prior discovery" and "the burden of necessary future discovery" as indicating prejudice).

Additionally, the proposed amendment would likely result in delay. Fresh Express, by its own admission, has "not yet propounded a majority of its discovery" (at least as of the date it filed its motion on January 22, 2015). (Motion, ECF No. 51 at 7.) This fact raises concerns about the viability of the upcoming fact discovery deadline. Fresh Express's counterclaim would require additional discovery and therefore increases these concerns. Amcor might move to dismiss the proposed counterclaim. The briefing for such a motion would add further delay. These delays would risk necessitating an extension of the current trial date, which is less than six months away. Still, this is not an enormously complicated case, and perhaps the court could adjust discovery deadlines to minimize prejudice while still maintaining an orderly completion of discovery and motions before the trial date.

The real issue, though, is that the counterclaim Fresh Express seeks to assert appears to be futile in that it is entirely speculative and based on an inference made by Fresh Express that is not supported by new discovery to date (a context that might support an amendment). Fresh Express so far has not even been to conceptualize its counterclaim adequately. As explained above, Fresh

11

1  Express said in its motion that its counterclaim is based on Amcor's 2012 bid amount being
2  significantly lower than the price Fresh Express had been paying to Amcor under the 2006 Supplier
3  Agreement. (*Id.* at 4.) Fresh Express then speculated that this "strongly suggests" that Amcor made
4  similar offers to other customers in violation of its price warranty obligation. (*Id.*) In its reply,
5  Fresh Express said that its counterclaim is based on the discrepancy between Amcor's 2012 bid and
6  the (lower) bids submitted by Amcor's competitors. (Reply, ECF No. 55 at 2.) Fresh Express then
7  once again speculated that this "strongly suggests" that Amcor must have offered comparably low
8  prices to other customers in order to stay in business. (*Id.*) Under either speculative theory, the
9  court does not believe that Fresh Express sufficiently alleges a plausible claim for relief.

10  For these reasons, even if the court found good cause under Rule 16(b), leave to amend would be
11  inappropriate under Rule 15.

12  **C. Fresh Express Has Not Shown That Good Cause to Add The Additional Affirmative**
13  **Defenses Exists Under Rule 16(b) and Leave to Add Them Is Inappropriate Under Rule 15**

14  Fresh Express also seeks leave to add the affirmative defenses of waiver and estoppel. (Motion,
15  ECF No. 51 at 5.) Two of the proposed defenses (nos. 19 and 21) rely on the fact that Amcor
16  submitted a bid in 2012 in response to Fresh Express's RFP and Amcor's behavior after being
17  informed that another bidder was awarded the contract. (*Id.* at 6.) As discussed above, Fresh
18  Express has had knowledge of these facts since the bid was received in 2012, has acknowledged the
19  bid in several documents served or filed in this action, and has alleged no new or distinct facts that
20  might explain why, despite its diligence, it only recently identified its proposed defenses. The court
21  therefore finds that Fresh Express has not been diligent in asserting these defenses.

22  The other two proposed additional affirmative defenses (nos. 18 and 20) rely on the fact that
23  Fresh Express stopped purchasing the Evolution product. (*Id.*) This fact, however, implicates
24  several of the affirmative defenses already asserted by Fresh Express in its original answer. (*See*
25  Answer, ECF No. 26 at 12-13 (Aff. Def. Nos. 2-5).) Also, Fresh Express again has failed to allege
26  any additional facts which might explain its delay in raising these defenses. The court therefore
27  finds that Fresh Express has not been diligent in asserting them.

28  Fresh Express has thus failed to meet the good cause standard of Rule 16(b) with regard to its

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

proposed additional defenses. Furthermore, the addition of the proposed affirmative defenses would result in the same prejudice to Amcor and undue delay discussed above. Leave to amend also would be inappropriate under Rule 15.

## CONCLUSION

For these reasons, the court denies Fresh Express's motion.

This disposes of ECF No. 51.

**IT IS SO ORDERED.**

Dated: March 2, 2015

_____
LAUREL BEELER
United States Magistrate Judge

13